## E.  The Trustee Has Failed To Prove A Basis For Rescinding The Note Repurchase Agreement

"[R]ecission is available only when a contract is procured by fraud or misrepresentation, when it is based on a material mistake, or in the presence of substantial non-performance or breach of contract by a party." Home Sav. Ass'n v. State Bank of Woodstock, 763 F.Supp. 292, 296 (N.D. Ill. 1991); Taylor v. Bob O'Connor Ford, Inc., No. 97 C 0720, 1998 WL 177689, at * 12 (N.D. Ill. Apr. 13, 1998). The Trustee argues that Bank One, through its officers and lawyers, made representations to Goss that Goss had repurchased 15% of the Grupo Serla Note, and was required to repurchase the remaining 85% of the Grupo Serla Note. In selling the Grupo Serla Note to Union Industrial, Goss argues that Bank One sold a promissory note that Goss already purchased. Thus, Goss argues Bank One did not substantially perform its contractual rights under the Note Repurchase Agreement and that agreement should be rescinded and payments thereunder returned.

However, Bank One did substantially perform its obligations. Under the Note Repurchase Agreement and Repurchase Note, the only remaining performance required of Bank One - to endorse and return the Grupo Serla Note to Goss - was expressly conditioned on Bank One's "receipt of payment in full in immediately available funds of all amounts due and payable by the Company under or in connection with the Repurchase Note . . ." (Pl. Ex. 21, Agmt. § 2.) It is undisputed that at no time before filing bankruptcy or thereafter did Goss make the final payments due under the Repurchase Note. The Trustee's assertion that Goss' delivery of the Repurchase Note to the Bank constituted immediate actual full payment to the Bank for the Grupo Serla Note is contrary to the legal presumption that a promise to pay is not to be regarded

as payment, and was rejected in earlier discussions herein. As a result, Bank One never became

obligated to perform under the Note Repurchase Agreement and was not required to deliver the

Grupo Serla Note to Goss. Coronet Ins. Co. v. Saez, 151 Ill. App. 3d 287, 502 N.E.2d 1292,

1295 (1986).

Further, because Goss itself was in default under the Note Repurchase Agreement, neither

it nor its Trustee could seek to rescind the agreement. W.H. Purcell Co v. Sage, 200 Ill. 342, 65

N.E. 723 (Ill. 1902); 12A Ill. Law & Prac. Contracts § 375, at 216 (1983) ("A party to a contract

may not take advantage of his own default to rescind the contract, nor may he rescind for breach

of the contract by the other party if he himself is substantially in default.")

For these reasons, the Trustee's rescission argument fails.

**F.    The Trustee's Assertion Of Claims For Tortious
        Interference With Contract And Tortious Interference
        With Prospective Economic Advantage Following Trial Was Waived**

In the Trustee's final proposed Findings of Fact and Conclusions of Law submitted post-

trial, the Trustee argued for the first time that Bank One tortiously interfered with the Agreement

in Principal [sic], dated June 25, 2001, between Goss and the Foreign Defendants. (Pl. Ex. 25.)

The Trustee also asserted for the first time the claim that Bank One tortiously interfered with

Goss' prospective economic advantage, arguing that Goss was to collect certain monies from

Quebecor stemming from sale of Grupo Serla's assets to Quebecor (the claims will be referred to

hereinafter as the "Alleged Interference Claims"). Notice of these claims was not given or

pleaded in the Initial Complaint or the Amended Complaint filed May 19, 2005 (only four

months before trial), nor were those claims discussed in the initial Trustee's Proposed Findings

of Fact and Conclusions of Law submitted pretrial in accordance with this Court's Final Pretrial

Order. At no time before or after trial did the Trustee ask leave of court to plead the Alleged Interference Claim.

The Trustee now argues that Bank One's post-petition actions in violating the automatic stay interfered with the potential recovery of $2,700,000.00 for Goss. He further argues that Bank One's actions in violating the automatic stay prevented Goss from receiving $5,000,000.00 from Quebecor, and wishes to argue that this stay violation was a tortious interference with the economic expectations of Goss.

Final pretrial orders are designed to prevent unfair surprise and give parties an opportunity to fairly prepare for and defend against new claims. Gorlikowski v. Tolbert, 52 F.3d 1439, 1443-44 (7th Cir. 1995) (noting that "[b]ecause the parties rely on the pretrial conference to inform them precisely what is in controversy, the pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial."). See also In re Craig, No. 03 A 4341, 2004 WL 1490427, at *1-3 (Bankr. N.D. Ill. June 29, 2004 ) (sanctioning debtor for failing to comply with final pretrial order); SNA Nut Co. v. Haagen-Dazs Co., 302 F.3d 725, 732 (7th Cir. 2002) (holding that "a defense not raised in a pretrial order is deemed waived").

Since the whole purpose of pretrial conferences and orders "is to clarify the real nature of the dispute at issue, a claim or theory not raised in the pretrial order should not be considered by the fact-finder." Gorlikowski v. Tolbert, 52 F.3d 1439, 1444 (7th Cir. 1995). As was further noted in SNA Nut Co. V. Haagen Dazs Co., "[w]hile this result may seem harsh, pretrial orders help to prevent protracted litigation due to changing theories and arguments such as those that we are encountering in this case." 302 F.3d 725, 732 (7th Cir. 2002).

This Court's Final Pretrial Order, dated November 9, 2004, stated, "Any party not filing proposed Conclusions of Law or a brief may be found to have waived legal issues not thereby presented." Pursuant to that Order, the Trustee was required to at least give notice in advance of trial all grounds for relief sought.

Therefore, the Trustee's attempt to raise these new tort claims post-trial is denied. Any other result would unfairly prejudice Bank One because it did not receive notice of such claim or have any opportunity to: (1) build legal defenses to these claims in pre-trial discovery; (2) attack these claims in its pre-trial briefs; and (3) call witnesses to rebut these claims and cross-examine Trustee's witnesses on these claims during trial.

The Trustee has not even asked for leave to amend the Complaint to add the Alleged Interference Claims. While leave to amend shall be freely given when justice so requires under Fed. R. Civ. P. 15(a), leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. Villa v. City of Chicago, 924 F.2d 629, 632 (7th Cir. 1991); Chavez v. Illinois State Police, 251 F.3d 612, 633 (7th Cir. 2001). At any event, such leave was not even requested.

As is the case here, "[u]ndue prejudice occurs when the amendment 'brings entirely new and separate claims'...." In re Ameritech Corp. v. Computer Systems Solutions, Inc., 188 F.R.D. 280, 283 (N.D. Ill. 1999). The Trustee's attempt to add the Alleged Interference Claims by final argument must not be allowed. Indeed, there is some doubt whether attempt to amend the Complaint at this time should be allowed if it were sought because the Trustee had sufficient

time prior to the filing of his Final Proposed Findings of Fact and Conclusions of Law to assert these claims. See Jones v. GES Exposition Servs., Inc., No. 02-6243, 2004 WL 2011396, at *6 (N.D. Ill. Sept. 3, 2004) (denying motion to amend because plaintiff's filings showed that he knew of the grounds for claims against the new proposed defendants for years, but needlessly waited). Moreover, the Trustee's tardy attempt to argue the Alleged Interference Claims after trial prejudices Bank One's ability to defend against or argue this issue. Fort Howard Paper Co. v. Standard Havens, Inc., 901 F.2d 1373, 1379-80 (7th Cir. 1990) (denying post-trial attempt to add defenses to Answer).

Trustee's argument is not saved by our Circuit authority on the meaning of federal notice pleading. The Federal Rules of Civil Procedure are based on the concept of notice pleading. Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1057 (7th Cir. 1998). Under this concept, "[i]t is sufficient if the complaint adequately notifies the defendants of the nature of the cause of action." Id. In this case, the Trustee did not give notice that a cause of action in tort was presented or intended in his First Amended Complaint or his pre-trial proposed Findings of Fact and Conclusions of Law. There was no notice at all that the Trustee intended to assert a cause of action in tort until his post-trial Findings of Fact and Conclusions of Law. Notice of that sort following trial for the first time does not satisfy federal notice pleading standards.

## VI.    Damage Analysis

### A.    The Appropriate Amount Of Damages
### Awarded In Favor Of Trustee And Against Bank One

Trustee's recovery of damages for stay violation, for violation under U.C.C. § 9-207 and under 11 U.S.C. 549 all implicate and caused the same damages.

In this case, the Trustee proposes several possible theories for which damages may be recovered. He argues that acts by Bank One damaged Goss by the following: (1) preventing Goss from receiving $2,700,000.00 from the settlement between Goss and Grupo Serla, including preventing Goss from collecting $1,800,000.00 in two checks endorsed by Grupo Serla to Goss pursuant to that settlement; (2) preventing Goss from enforcing its security interest through the Mexican Pledge Proceedings; and (3) preventing Goss from receiving $5,000,000.00 withheld in connection with the re-sale of the Printing Press to Quebecor. The Trustee therefore seeks a money judgment against Bank One for all these computations of damages plus punitive damages and fees.

In general, "[a] 'plaintiff has the burden of proving damages to a reasonable degree of certainty.'" Haslund v. Simon Property Group, Inc., 378 F.3d 653, 658 (7th Cir. 2004) (quoting Williams v. Board of Education, 367 N.E.2d 549, 553 (1977)). "Damages must be proved, and not just dreamed, though 'some degree of speculation is permissible in computing damages, because reasonable doubts as to remedy ought to be resolved against the wrongdoer.'" MindGames, Inc. v. Western Pub. Co., Inc., 218 F.3d 652, 658 (7th Cir. 2000) (citations omitted).

106

Damages cannot be based on pure speculation or guesswork, but they also need not be proven with the certainty of calculus. BE&K Const. Co. v. Will & Grundy Counties Bldg. Trades Council, 156 F.3d 756, 770 (7th Cir. 1998). Under Illinois law, where the existence of damages is established, "the evidence need only tend to show a basis for the computation of damages with a fair degree of probability." Medcom Holding Co. v. Baxter Travenol Laboratories, Inc., 106 F.3d 1388, 1398 (7th Cir. 1997) (citing In re Busse, 124 Ill. App. 3d 433, 438-39 (1984)).

The possible theories for which damages may be recovered will be discussed below:

**1.      Damages resulting from preventing Goss from receiving $2,700,000.00 from the settlement between Goss and Grupo Serla, including preventing Goss from collecting $1,800,000.00 in checks endorsed by Grupo Serla to Goss pursuant to that settlement.**

On or about June 25, 2001 Guarneros came to Chicago and executed a handwritten summary of terms for agreement with Goss ("Agreement in Principal [sic]") on behalf of his company, Grupo Serla. (Pl. Ex. 25.) The Agreement in Principal [sic] provided that "Goss will release any security interest, or retention of title or pledge upon full payment ..." Id. Pursuant to the Agreement in Principal [sic] Guarneros agreed to pay Goss $2,700,000.00. Guarneros testified that it was his intent to pay Goss 100% of those funds. (S. Guarneros, 10/05/05, Test. 89.) Evidence further suggests that Guarneros intended to cooperate and agree to the terms in the Agreement in Principal [sic], as Guarneros authorized Quebecor to issue two checks totaling $1,800,000.00 payable to Grupo Serla and endorsed by Grupo Serla in favor of Goss. (Pl. Ex. 57; S. Guarneros, 10/05/05, Test. 89.)

Goss, however, could not satisfy its obligations under the Agreement in Principal [sic] until it acquired the Grupo Serla Note. Goss could only obtain possession and ownership of the Grupo Serla Note upon paying Bank One $1,425,495.12, plus accrued interest. Once Goss paid Bank One the requisite amount due, it would have the ability to implement the Agreement in Principal [sic]. (Pl. Ex. 57.)

Bank One argues that the Foreign Defendants did not intend to be bound by the handwritten settlement agreement. However, even though that agreement could be said to require a more detailed documentation, Guarneros testified that he intended to pay Goss $2,700,000.00 and was able to do so. Further, checks totaling $1,800,000.00 endorsed to Goss were en route to Goss. By paying Bank One the outstanding balance, Goss would have been able to fulfill its obligations under the Agreement in Principal [sic]. That is, out of the $1,800,000 it could have paid off the Bank the approximately $1,500,000 due it and then still retained $300,000 and the right to the rest of the promised $2,700,000 (amounting to another $900,000) for a net recovery of $1,200,000.

Bank One's actions prevented Goss from recovering any settlement proceeds. Instead, Goss lost the opportunity to participate in a tripartite transaction consisting of itself, Bank One, and Grupo Serla which would have allowed it to realize net proceeds of $1,200,000 after paying off the Bank debt from the settlement. Bank One's actions blocked and presented that likely outcome.

The $1,200,000 thereby lost by Goss comprises damages that can be measured with reasonable certainty, plus attorneys fees and costs. A separate evidentiary hearing will be set to rule on the amount of attorney fees sought by the Trustee. This computation of $1,200,000 in

108

damages applies to fix damages both for willful stay violation and also to measure damages for

the U.C.C. § 9-207 violation by Bank One earlier discussed and for the unauthorized transfer of

property interests under 11 U.S.C. § 549.

> **2.  Damages Asserted to Result from Preventing Goss from
> Enforcing its Security Interest Through the Mexican Pledge
> Proceedings**.

The Trustee argues that Bank One's actions prevented Goss from enforcing its security

interest in the Mexican Pledge Proceedings.  The Mexican court Judge in the Pledge Proceedings

dismissed the case because Goss was unable to produce the original Grupo Serla Note.  Goss,

however, had no right to possess the Grupo Serla Note.  Bank One owned the Grupo Serla Note

and was not required to turn the Grupo Serla Note over to Goss until it was paid in full.  Bank

One possessed the Grupo Serla Note as a form of security, and it would make no commercial

sense to have given the Grupo Serla Note to Goss in the absence of full payment of its

obligations.  Only if Goss had paid Bank One the full amount due and owing under the Grupo

Serla Note, it would have had the opportunity to enforce it in the Mexican proceedings.

Apart from the lack of evidence or authority to suggest that Bank One had to provide

Goss with the original Grupo Serla Note, evidence suggests that Bank One did cooperate with

Goss in the state court litigation as Bank One and Goss filed a joint complaint against the

Foreign Defendants.  (Pl. Ex. 15.)

At any event, this path toward ascertaining damages is far too speculative.

3.    **Damages Asserted to result from preventing Goss from
receiving $5,000,000.00 held back in connection with the re-
sale of the Printing Press to Quebecor.**

The Trustee argues that Bank One's willful violation of the automatic stay prevented

Goss from receiving $5,000,000.00 withheld by Quebecor in connection with the asset sale to

Grupo Serla.

Bank One argues that the Trustee failed to offer proof as to the reason Quebecor

ultimately decided to release the funds to Grupo Serla. However, the letter written by Kaplan of

Bank One demonstrates why Quebecor ultimately decided not to release the funds to Goss -- that

is, Bank One had sold the Grupo Serla Note to Union Industrial.

On or about December 20, 2001 Kaplan wrote a "To Whom It May Concern" letter

addressed to Union Industrial stating that Bank One had sold its promissory note from Goss to

Union Industrial and that the only remaining issue was the receipt of an execution copy of the

note purchase agreement. (Pl. Ex. 107.) Bank One knew that in order to complete the sale with

Quebecor, Grupo Serla would need the Printing Press to be free and clear of all liens. Bank One

therefore negotiated the sale with Union Industrial whereby it received $1,100,000. Bank One

then wrote the above "To Whom It May Concern" letter in which it acknowledged that it had

sold the Grupo Serla Note to Union Industrial. Union Industrial could then forward this letter to

Quebecor as evidence that the Printing Press was now free and clear of all liens and the sale

could thus be consummated. The only party that did not benefit from this scheme and procedure

was Goss.

However, Goss did not have possession of the Grupo Serla Note and as such, could not

have released it to Quebecor. Quebecor did not enter into any agreement with Goss to pay Goss

110

for the Printing Press. Goss could not expect any funds from Quebecor because it was not in

possession of the Grupo Serla Note and did not have the cash needed to redeem the Note.

Therefore, this path to computation of damages is speculative. Thus, the Trustee is not entitled

to damages based on this theory.

### B.  Punitive Damages Are Appropriate

In determining whether an award of punitive damages is appropriate for a creditor's

violation of the automatic stay, the following relevant factors may be considered: (1) the nature

of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor;

and (4) any provocation by the debtor. In re Sumpter, 171 B.R. 835, 845 (Bankr. N.D. Ill. 1994).

"Punitive damages are awarded in response to particularly egregious conduct for both punitive

and deterrent purposes." Id.

It is beyond dispute that awarding punitive damages is appropriate in certain cases to

punish a wrongdoer for outrageous conduct and to deter others from engaging in similar conduct.

Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1352 (7th Cir. 1995). "An award of

punitive damages, however, must be supported by the record and may not constitute a windfall to

the prevailing party." Id. (citations omitted).

It should be presumed that because a plaintiff has been made whole by compensatory

damages, punitive damages should only be awarded if the actions of the defendant are so

reprehensible to warrant further sanctions to achieve punishment or deterrence. State Farm v.

Campbell, 538 U.S. 408, 416 (2003) (noting that "few awards exceeding a single-digit ratio

between punitive and compensatory damages, to a significant degree, will satisfy due process.").

111

Under Illinois law, punitive damages are disfavored. <u>Zelinski v. Columbia,</u> 335 F.3d 633, 641 (7th Cir. 2003) (citing <u>Smith v. Prime Cable of Chicago</u>, 276 Ill. App. 3d 843, 213 Ill. Dec. 304, 658 N.E.2d 1325, 1336 (1995)). They are therefore only recoverable "where the alleged misconduct is outrageous either because the acts are done with malice or an evil motive or because they are performed with a reckless indifference toward the rights of others." <u>Id.</u>

Based on the above factors and precedent, punitive damages are appropriate in this case. Bank One's conduct was particularly egregious in light of the circumstances, Bank One is a sophisticated creditor with the ability to pay damages, Bank One was motivated by the opportunity to gain $1,100,000 as opposed to having its claim dealt with in Goss' bankruptcy, and Bank One acted with indifference to the harm it was causing to Goss in bankruptcy.

Bank One's actions in executing the sale to Union Industrial were deliberate and intentional. It was fully aware that it was selling and delivering the Grupo Serla Note and Pledge to an entity connected to the makers. The law firm representing Union Industrial in connection with the sale was the same law firm representing Guarneros and His Companies in the DuPage Litigation and otherwise. Bank One admitted at trial that the initial offer to purchase the Grupo Serla Note and Pledge was made on behalf of the makers of the Grupo Serla Note themselves. (M. Page, 9/30/05, Test. 63-64.) Thus, Bank One knew the harm it was doing to Goss and it harmed Goss' property interest that was part of the bankruptcy estate in complete disregard of the bankruptcy stay. Sophisticated commercial entities cannot be allowed to disregard the stay and grab a slice of benefit that would otherwise go to bankruptcy creditors. This type of conduct must be deterred by a serious award in addition to damages.

Therefore, the judgments entered in favor of Trustee and against Bank One will include

punitive damages in the amount of $100,000.00, an amount large enough to demonstrate the

serious nature of stay violation and deter similar conduct by others.

## VII.    Editorial Comercial Breached The Contract To Sell The Printing Press By Failing To Pay For The Printing Press

### A.    Summons Served On Foreign Defendants

On December 31, 2003 the Foreign Defendants moved to Quash Summonses and to

Dismiss Pursuant to Bankruptcy Rule 7012(b) ("Motion to Quash"). They argued that the

Trustee's attempt to serve them by registered mail was insufficient under Fed. R. Civ. P. 4 and

Article 10(a) of the Hague Convention. See Convention on the Service Abroad of Judicial and

Extrajudicial Documents in Civil or Commercial Matters, Feb. 10, 1969, 20 U.S.T. 361, 658

U.N.T.S. 163. They also argued that the exercise of jurisdiction over certain of the Foreign

Defendants was inconsistent with constitutional guarantees of due process.

On May 18, 2004, an Order was entered denying the Motion to Quash for reasons then

stated from the bench. That decision was based on a Seventh Circuit opinion, Research Systems

Corp. v. IPSOS Publicite, 276 F.3d 914 (7th Cir. 2002). In Research Systems Corp. it was

opined that the manner of service by simple certified mail is a method permitted by Article 10(a)

of the Hague Convention, so long as the foreign country does not object. Id. at 926. In this case,

the parties agreed that the Mexican government has never indicated any objection to service on

its citizens by mail from a foreign country. Under that decision, stare decisis in this Circuit holds

that service by registered mail is sufficient. Further, service by mail has long been held to meet

due process requirements. See Fed. R. Civ. P. 5(b)(2)(B); Mullane v. Central Hanover Bank &

Trust Co., 339 U.S. 306, 319 (1950) (noting that "the mails today are recognized as an efficient and inexpensive means of communication.").

## B.   Merits Of Contract Breach Actions

Grupo Serla, Editorial Comercial, and Guarneros all executed or guaranteed the Grupo Serla Note to obtain the Printing Press. They failed to pay for the Printing Press as required and now must pay damages to Goss.

To properly prove a cause of action in breach of contract, a plaintiff must establish the following essential elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff. Gallagher Corp. v. Russ, 309 Ill. App. 3d 192, 199, 721 N.E.2d 605, 611, 242 Ill. Dec. 326, 332 (1999) (citing Allstate Insurance Co. v. Winnebago County Fair Association Inc., 131 Ill. App. 3d 225, 233, 86 Ill. Dec. 233, 475 N.E.2d 230 (1985)).

A defendant's failure to comply with a duty imposed by the contract gives rise to the breach. Hickox v. Bell, 195 Ill. App. 3d 976, 992, 142 Ill. Dec. 392, 552 N.E.2d 1133 (1990). In a breach of contract action, a plaintiff should prove the factual circumstances surrounding formation of the agreement, specifically, the offer, acceptance and existence of valuable consideration. Gallagher Corp., 309 Ill. App. 3d at 199.

In this case, Editorial Comercial agreed to purchase the Printing Press pursuant to the Contract To Purchase The Press. Goss delivered the Printing Press pursuant to the Contract To Purchase The Press. Grupo Serla and Editorial Comercial executed a Promissory Note for the financed portion of the purchase price. Guarneros personally guaranteed the Promissory Note. Editorial Comercial, Grupo Serla, and Guarneros failed to pay as required. Guarneros and His

114

Companies then sold the Printing Press to a third party and kept the proceeds. Goss suffered

significant damages as a result of the Foreign Defendants breach of contract through

nonpayment.

The Foreign Defendants argued that the Printing Press did not deliver 45,000 impressions

per hour as promised in the Purchase and Sale Agreement and Goss' pre-sale representations.

However, they failed to offer expert testimony or detailed evidence to corroborate this assertion

by preponderance of evidence.

Editorial Comercial also attempted to argue that the Printing Press was never accepted.

However, testimony of Guarneros demonstrates that the Printing Press was used for several

years. Guarneros testified as follows:

> Q: At some time the Goss Universal produced commercially
> acceptable product, did it not?
> A: Acceptable in reference to what? Directories? Magazines?
> Books?
> Q: At least one of those, correct?
> A: Yes. Very poor quality, but, yes.

(S. Guarneros, 10/5/05, Test. 44-45.)

Editorial Comercial's defense that it never accepted the Printing Press fails. The Contract

To Sell The Press defines acceptance. Paragraph four of the Contract To Sell The Press states:

> 4.    Conformity – Acceptance Of Machinery
> a) Conformity shall mean substantial conformity of the Machinery
> in all material respects to the applicable descriptions, specifications
> and warranties of sale. Conformity shall be conclusively
> determined upon the occurrence of any one of the following
> events:
>
> > (i) Purchaser's production of saleable, commercially
> > acceptable product in the ordinary course, subject to the

115

> printing limitations imposed on the type of printed product,
> supplies or auxiliary equipment, or Purchaser's operating
> personnel . . .

(Pl. Ex. 2; ST 1055.)

Guarneros testified that he took no steps to return the Printing Press. Guarneros admitted

at trial that he did not request that Goss take back the Printing Press. While Guarneros attempted

to argue that the Printing Press was never accepted because it was defective and did not perform

as specified, it was ultimately sold as the largest single asset of the $13,000,000.00 asset sale to

Quebecor, demonstrating its continued market value.

The Uniform Commercial Code also defines acceptance. U.C.C. § 2-606 provides that

acceptance occurs when the buyer:

> (a) after a reasonable opportunity to inspect the goods signifies to
> the seller that the goods are conforming or that he will take or
> retain them in spite of their non-conformity; or
> (b) fails to make an effective rejection (subsection (1) of Section 2-
> 602), but such acceptance does not occur until the buyer has had a
> reasonable opportunity to inspect them; or
> (c) does any act inconsistent with the seller's ownership; but if such
> act is wrongful as against the seller it is an acceptance only if
> ratified by him.

See 810 Ill.Comp. Stat. 5/2-606 (2004).

In this case, Guarneros and His Companies used the Printing Press for four years. This

allowed them ample time to inspect and reject the Printing Press prior to actually selling the same

to Quebecor as the largest part of a $13,000,000 asset sale. The Printing Press was the highest

valued single asset Quebecor purchased in the sale. (Pl. Ex. 23, ST 257.) These facts

demonstrate that Editorial Comerical accepted the Printing Press. The Foreign Defendants

claimed that the Printing Press did not deliver 45,000 impressions per hour as promised in the

116

Purchase and Sale Agreement and based on Goss' pre-sale representations. However, the evidence and facts presented at trial demonstrate that the Printing Press was used to produce commercially acceptable products with nine or ten workers using the Printing Press for several shifts a day over a period of several years.

When a buyer has used the goods provided by the seller, he cannot thereafter claim that he has not accepted them. Sherwin-Williams Co. v. Mark Charcoal Co., Inc., No. 80 C 4541, 1985 WL 3932, at *3 (N.D. Ill. Nov. 15, 1985). "The law does not permit a person to receive goods under a contract, appropriate them for his own use, and then defeat an action for the purchase price on the ground that the goods were not of the exact quality or description called for by the contract." Foley & Co. v. Excelsior Stove & Manufacturing Co., 265 Ill. App. 78, 94 (3d Dist. 1932).

Under Illinois law, Guarneros and His Companies cannot assert that they never accepted the Printing Press when they clearly exercised ownership over it and used it extensively for many years following purchase. See, Foley & Co. v. Excelsior Stove & Manuf. Co., 265 Ill. App. 78, 94 (3d Dist. 1932) (use of 8,000 catalogs of 25,000 printed constitutes acceptance of all of them); Sherwin-Williams Co. v. Mark Charcoal Co., Inc., 1985 U.S. Dist. Lexis 13846, 1985 WL 3932 (N.D. Ill. 1985) (holding that a buyer cannot revoke acceptance if it exercises dominion over the goods or permits them to be altered or changed while in its control). Pursuant to its contractual obligations to Goss, Editorial Comercial must now pay Goss for the Printing Press.

In connection with the Sale and Purchase Agreement, Editorial Comercial and Grupo Serla executed a Promissory Note in the amount of $5,370,000.00. Guarneros personally guaranteed the debt and signed the Promissory Note as Guarantor. Guarneros and His

117

Companies failed to pay Goss as agreed. There remains $9,724,858.50 due and owing pursuant to the Promissory Note including interest on the Note through commencement of time, plus interest accruing to date of judgment. As a result, a separate judgment will enter in favor of Plaintiff against Guarneros and His Companies jointly and severally for principal and interest due plus attorneys fees allowed by the contract papers when enforcement is required, plus costs.

The Sale and Purchase Agreement provided:

Upon an Event of Default, Seller shall provide Purchaser with written notice thereof and an opportunity to cure within a reasonable time determined by Seller and specified in such notice. Upon the failure of Purchaser to cure in accordance with Seller's demand and upon written demand by Seller, the Purchaser shall peaceably deliver possession of the Machinery to Seller, and, to the extent permitted by law, the entire contract indebtedness remaining unpaid shall become immediately due and payable. Purchaser shall reimburse Seller for its reasonable expenses incurred in the retaking, holding, preparing the Machinery for resale and the expenses relating to reselling and the like, and for the reasonable attorneys' fees and legal expenses incurred by the Seller. In addition, Seller shall have all the rights and remedies of a seller and a secured party as established or permitted upon agreement by the Uniform Commercial Code which rights and remedies, to the extent permitted by law, shall be cumulative.

(Pl. Ex. 2, ST 1057.)

Editorial Comercial, Grupo Serla, and Guarneros failed to pay Goss amounts due under the Grupo Serla Note and the Sale and Purchase Agreement. Editorial Comercial was obligated to make payments to Goss under the Grupo Serla Note and the Sale and Purchase Agreement. Grupo Serla and Guarneros were obligated to make payments to Goss pursuant to the Grupo Serla Note. Written demand was made for payment, but not complied with.

A separate judgment will therefore enter in favor of Trustee and against Editorial Comercial, Grupo Serla, and Guarneros jointly and severally for the balance due and owing on the Grupo Serla Note plus interest accruing thereon until this trial began for a total then of

$9,724,858.50 plus further contract interest to date of judgment, plus attorney fees and costs as provided for in the Sale and Purchase Agreement quoted above. A separate evidentiary hearing will be held on the amount of Trustee's attorney fees to be awarded against these Defendants apart from attorneys fees sought against the other Defendant Bank One.

## CONCLUSIONS

For reasons stated herein, Judgments will separately be entered as follows on the Trustee's First Amended Complaint:

Counts I, II, and III address Editorial Comercial, Grupo Serla, and Guarneros' failure to make payments to Goss pursuant to the Sale and Purchase Agreement, the Grupo Serla Note, and Guarneros' personal guaranty of the Grupo Serla Note. Trustee will recover judgment against those parties as provided above on those counts, for damages plus fees and costs.

Count IV seeks a declaratory judgment which will be denied for reasons stated.

Count V seeks imposition of a constructive trust and other relief against all Defendants which will be denied pursuant to reasons stated.

Count VI seeks rescission of the December 15, 2000 Agreement which will be denied pursuant to reasons stated.

Judgment will therefore be entered on Counts IV, V and VI in favor of Defendants.

Count VII seeks recovery declaring that transfer of the Note by Bank One was void, pursuant to 11 U.S.C. § 549, but while the Note transfer was not void the transfer of Goss interests in the Note is void and damages of $1,200,000 will be awarded. The same damages are awarded because Bank One violates its duty to Goss under U.S.C. § 9-207 as adopted in Illinois.

Count VIII seeks recovery against Bank One in the form of damages based on Bank One's willful violation of the automatic stay. Pursuant to Bank One's willful violation of the automatic stay and for reasons stated, judgment will separately enter in favor of Trustee and against Bank One for $1,200,000 in actual damages, plus $100,000.00 in punitive damages, plus attorney fees and costs. The amount of fees to be awarded (allocated separate from fees awarded against the Foreign Defendants) will be determined by this Court at a later evidentiary hearing.

Pursuant to these Findings of Fact and Conclusions of Law, and separate order this date, this case is set for status to consider Trustee's requests for attorneys fees and proposed draft judgment orders against Foreign Defendants under Counts I, II, and III, for judgment in favor of Defendants under Counts IV, V, and VI, and for judgment order against Bank One under Counts VII and VIII and to consider requests for fees against it.

All costs will be sought by Bills of Costs separately allocated between the Mexican Defendants and Bank One and noticed before the Court for approval and allowance.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Entered this _____ day of September 2006.

120

## CERTIFICATE OF SERVICE

I, certify that on September 7th, 2006, I caused to be mailed by United States first class

mail copies of the foregoing FINDINGS OF FACT AND CONCLUSIONS OF LAW to the

following:

Donald C. Shine, Esq.
Daniel P. Dawson, Esq.
Jessica R. Falk, Esq.
Nisen & Elliott, LLC
200 West Adams Street
Suite 2500
Chicago, IL 60606
Counsel for Plaintiff

Vaughn A. White, Esq.
Maria Ramirez Strohmeier
Montes & Associates
831 North Ashland Avenue
Chicago, IL 60622
Counsel for Sergio Edwardo Guarneros
Trujillo

David E. Bennett, Esq.
Anne M. Therieau, Esq.
Eric S. Prezant, Esq.
Leslie A. Bayles
Vedder, Price Kaufman & Kammholz, P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL 60601
Counsel for Bank One

Joseph M. Russell, Esq.
Senior Counsel
JPMorgan Chase Bank, N.A.
1 Bank One Plaza
10 S. Dearborn
Chicago, IL 60670

Gus A. Paloian, Esq.
Seyfarth Shaw
55 East Monroe Street
42nd Floor
Chicago, IL 60603
Chapter 7 Trustee

Office of the U.S. Trustee
227 West Monroe Street
Suite 3350
Chicago, IL 60606